May it please the Court, Mark Drozdowski of the Office of the Federal Public Defender, on behalf of Petitioner and Appellant Mario Guerra. At a murder trial where the prosecutor said that the only issue was the identity of the shooters, the only evidence that Guerra was a shooter came from the untested, out-of-court admission of his non-testifying co-defendant, Andrade. The State Court and Magistrate Judge emphasized that this statement was made out of custody and not to law enforcement. But as this Court said in Padilla, there is no universal rule that all declarations against penal interests made outside of police custody to people other than law enforcement are per se reliable. Test is sufficient and disy of credibility or reliability. Am I correct? That is correct, Your Honor. Under Ohio v. Roberts, which is the operative rule in this case because the direct appeal concluded before a problem. Now, this man had no motive to lie, did he? Well, he certainly did. What we have here, the statements to Mariscal actually starts out with a lie where he says Scrappy was in jail for murder rather than vandalism. And this is significant because it shows right out of the box that he is engaged in deception. Now, a trial. I mean, deception or maybe he just was misinformed as to why Scrappy was in the L.A. County Jail. The State Trial Court judge ruled that was irrelevant to any issue in this case and I'm having a hard time understanding why that evidentiary ruling was incorrect. It's incorrect because it goes to the heart of the reliability of the statement. Here you have Andrade's counsel telling the judge at trial that Andrade told him that he knew that statement was false. And Andrade's lawyer is telling the court, I have Scrappy here that I independently verified that Scrappy was only in jail on a vandalism charge and not murder. I have Scrappy here and we can put him on to show that that was not true, which goes to the heart of the whole test under. I guess that's where I'm having a problem with is I don't see how that goes to the heart. I mean, if you look at the rest of the statements made to Andrade or made by Andrade to Mariscal, the rest of the discussion goes into all the details surrounding the shooting and I don't see anything unreliable in that portion of the tape. So I just don't understand why it would be relevant what Scrappy was in jail for. I mean, he didn't even have anything to do with this case. Well, Ohio v. Roberts and I hope he's right tell us that in assessing the reliability of the statement, we have to look at the totality of the circumstances in the making of the statement. And also the burden is on the state to prove the reliability from those circumstances. So I do think it is significant, this statement. It is part of the totality of the circumstances. And even if it wasn't a lie, it's at least, I think the record's pretty good on this, it's inaccurate. And so why are we believing the whole rest of the statement? But we have more than that. We have a witness here. But I'm wondering if you're focusing on the wrong thing. Don't we focus on things like whether or not the declarant here, Andrade, was in custody at the time the statement was made? Whether or not he had a motive or a reason to lie about what he was saying to Mariscal? What were the circumstances under which Mariscal engaged Andrade in conversation? Those are the factors that we look at for determining reliability, are they not? I think those are factors. I think it's the totality. So I also think the statement regarding Scrappi is a factor. The other factors we also have here, which make this case unlike Padilla and Boone, for example, are you have Andrade here repeatedly saying, are you working for the pigs? Are you working for the police? Should I get my passport and jam out of here? How is this any different from two co-conspirators who are being recorded by one of the co-conspirators engaging the other co-conspirator in a conversation that is in furtherance of the conspiracy, even though it occurs after the fact of the shooting? Well, under Robert's test, one thing is the co-conspirator hearsay exception would solve the matter right there because that is a firmly rooted hearsay exception. We don't have that here with declarations. Mariscal wasn't a participant in the drive-by, so I guess it's not technically a drive-by. I guess it would be a drive-up shooting. So it doesn't come in under a co-conspirator declaration, but I don't see why it's any different where you've got one gang member talking to another gang member boasting about this hit that he just made. Well, a couple things. One, the court below relied heavily on Padilla and Boone, which are different, because here we've got one gang member talking to another, and the record doesn't show, for example, that these were close friends. Or, you know, the other cases talk about people being boyfriend, girlfriend, relative, where there's a real reason to believe that the speaker, his guard is down when talking to the other person. But the reason for the conversation, as I understand it, was Mariscal had been shot, and if you believe the prosecution's theory of the case, Andrade committed the crime in order to retaliate for the attempted murder of Mariscal, and so Andrade is now bragging to Mariscal about how, look, man, here's what I did to make things right for you, which enhances, apparently, Andrade's standing in the gang community, because he is now, what did he call himself, the executioner of God, and so now he's going to be the big man in the neighborhood. Right, but that doesn't mean that his statements as the guerrilla were true, and here we have him protecting the driver of the car. He's guarded with that. Mariscal asks him who the driver was, and he says, I can't give that up. That shows it's not an unguarded statement of some close friend. He's protecting her. Who else is he protecting? We have Bautista in this case, who in a prior statement of police says he got off. Everyone got off. I think there's a lot of reasons to believe that when we look at the totality of the circumstances, that Andrade was protecting other people involved. Don't we have to review this determination under the deferential lens of AEDPA? I mean, the California Court of Appeals looked at the same evidence that we're looking at and made a conclusion that under Ohio v. Roberts this was reliable. You're arguing it wasn't, but even if they got it wrong under AEDPA, the question is whether or not that determination was objectively unreasonable, and I'm having a hard time seeing on this record how I can reach that conclusion. Your Honor stated the correct rule. What I would say is this. Court decisions talk about deference under AEDPA, but when we look at the leading U.S. Supreme Court cases under AEDPA, say Miller-Rell or Wiggins, it shows that the court there actually closely scrutinizes what the state court did. AEDPA puts the state court decision front and center, and we look at what the state court did. And you're right. If it's merely wrong, that's not enough under D-1, Unreasonable Application Clause. It has to be objectively unreasonable. Here the state court focused quickly and I think rather dispositively, saying this isn't like Lilly, so that's that. And it did not mention the facts we've been discussing. And I think it overlooked those facts, and it's an unreasonable determination of the facts, as in Miller-Rell and Wiggins, where the court has before it, but it apparently ignores evidence that's important in assessing the claim. And that's the evidence we've been talking about, the guardedness regarding not identifying Zinovich, the deception, or at least inaccuracy, regarding Scrappi, and the suspicion that Mariscal's working with the police. And the state court opinion doesn't discuss it, and I think it's objectively unreasonable for it not to have found a violation here. If there are no further questions, I notice I have a minute and a half. I would like to reserve it. You may do so, counsel. Thank you. We'll hear from the government. Good morning, Your Honors. Deputy Attorney General Jason Tran on behalf of Respondent. Petitioner is not entitled to Federal habeas relief because there is no clearly established Supreme Court president compelling such relief. The only Supreme Court decision that even remotely applies in this case, Lilly v. Virginia, is readily and wholly distinguishable. And indeed, this Court's own president precludes relief in this case. The two cases, Padilla and Boone, discussed in the briefing. In light of this ---- Lilly, the defendant, was in custody during the statement, right? Absolutely. No, the witness, rather, was in custody. Yes. Here, this is a wiretap? I think it was a recorded telephone conversation that was initiated. A recorded telephone conversation. Mr. Andrade was not in custody. Right. What's your response to counsel's attack on the validity of admitting that testimony? The fact that Mr. Andrade was not under any police coercion whatsoever because he was not in police custody. He believed he was speaking with a friend, a fellow gang member, his homie, that reassured him that I would never lie to you. And no, of course, I'm not working with the police. And after that reassurance, Andrade gave detailed account without any hesitation, inculpating himself in the crime. And given these circumstances, it is very apparent that Andrade was not holding back any information. Whatever suspicion he may have had initially was dispelled. And therefore, without any police coercion, Andrade's statements were reliable. What about the inaccuracy about Scrappy? As Judge Tolman commented, that could have been misinformation that Andrade received. What do you mean by misinformation? A mistake? A mistake, yes. Andrade might have been mistaken. There is no affirmative proof that Andrade deliberately lied about Scrappy being in jail for some other crime that he was not. These are gang members. They commit all kinds of crimes every day. And they get their facts wrong. That's a possibility. Further? No, in light of these coarse comments, I have nothing further. Thank you. Mr. Help me with your name again. Grozowski? Yes. Okay. Thank you. You have about a minute and a half left. Thank you, Your Honor. The Attorney General says there's no clearly established law for a garris claim. There is. It's Ohio v. Roberts, and I thought the Attorney General had acknowledged that in his appellee's brief. In Padilla, a habeas case before this Court governed by AEDPA, this Court applied Ohio v. Roberts to assess whether the admission of an out-of-court statement by an accomplice to a friend violated the right to confront witnesses. So Ohio v. Roberts sets forth the general rules. Lilly is a fact-specific application of that rule. The fact that Lilly came out that way doesn't mean that we can't establish a right to relief under AEDPA on our claim. And in further support of that, I would But if the only Supreme Court authority addresses a declarant statement while in police custody and under police interrogation coercion, don't we have to have another Supreme Court case that extends the rule in Lilly to cooperating informants who are making one-party consent-recorded conversations at the direction of the police to a declarant who is not then in custody and who does not know that this is a police-originated call? I think the answer is no, based on the Supreme Court's opinion in Panetti, which said that you can approve an unreasonable application of law on a set of facts different from those in the case in which the principle was announced. So I don't think it needs to be So we should extend the rule in Lilly to a different fact situation? Well, I guess my answer would be yes. I'm not sure how far the Court would be extending it since under Ohio v. Roberts sets forth a general approach. In cases like Idaho v. Wright, we're talking about child abuse statements coming in. So after the conversation you and I were having about co-conspirator statements, that would perforce require us to declare co-conspirator statements under 801 D2E to also be a violation of Ohio v. Roberts. And we know that's not true because Ohio v. Roberts specifically exempts, as does Crawford, co-conspirator statements. With Ohio v. Roberts, the second prong about looking at the totality of the circumstances is to see whether there's sufficient indicia of reliability. It says it's a very fact-specific claim. It's a very general approach, just like Strickland. Strickland actually denied the claim there. No one could get relief under ineffective assistance if you had to match all the facts of the case announcing the principle. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And we will hear argument next in Williams v. Veolia Transportation Service.
judges: Lefkow, O'scannlain, Tallman